UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


PEARL McCRIMON,                           )      Case No.: 1:10 CV 392
                                          )
          Plaintiff                       )
                                          )
     v.                                   )      JUDGE SOLOMON OLIVER, JR.
                                          )
INNER CITY NURSING HOME, INC.,            )
dba, FAIRFAX HEALTH CARE CENTER,          )
                                          )
          Defendant                       )_____ORDER_____


     Currently pending before the court in the above-captioned case are Defendant Inner City

Nursing Home, Inc.'s ("Defendant") Motion for Summary Judgment (ECF No. 11), Plaintiff Pearl

McCrimon's ("Plaintiff") Motion to Strike Defendant's Motion for Summary Judgment (ECF

No.12), and Plaintiff's Motion for Extension of Time Until 10/14/2010 to File Supplemental

Affidavits (ECF No. 13). For the reasons stated herein, Defendant's Motion for Summary Judgment

is granted in part and denied in part, Plaintiff's Motion to Strike is denied, and Plaintiff's Motion for

Extension of Time Until 10/14/2010 to File Supplemental Affidavits is denied as moot inasmuch as

affidavits supporting Plaintiff's Opposition to Defendant's Motion for Summary Judgment were filed

in a timely manner.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff filed the instant suit against Defendant on February 22, 2010.  Plaintiff alleges that Defendant violated the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the Comprehensive Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and Ohio Worker's Compensation law.  (*Id*. at 2-4.)  Defendant filed a Motion for Summary Judgment on August 30, 2010.  (ECF No. 11.)  Thereafter, Plaintiff filed a Motion to Strike Defendant's Motion for Summary Judgment, alleging that Defendant's Motion is based on hearsay evidence.  (Pl.'s Mot. to Strike, ECF No. 12, at 1.)  On September 14, 2010, Plaintiff filed a Motion for an Extension of thirty days to obtain an affidavit for her Brief in Opposition to Defendant's Motion for Summary Judgment.  (ECF No. 13.)  However, she filed said affidavit with her opposition in a timely manner on September 28, 2010.  (ECF No. 14.)  Plaintiff also corrected her error in providing an unsigned affidavit by providing a signed affidavit the next day, on September 29, 2010, also timely filed, responding to Defendant's Motion for Summary Judgment. (*See* ECF No. 18.) Consequently, the court hereby denies her Motion for an Extension (ECF No. 13), as moot.  Therefore, the remaining motions before the court are Defendant's Motion for Summary Judgment and Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment.

Defendant, Inner City Nursing Home, Inc., is a family-owned and operated residential nursing and assisted living facility that provides twenty-four hour skilled nursing and medical care to approximately one hundred elderly residents.  (Melvin Pye ( "Pye") Decl. at 1, ECF No. 11-1.) Pye serves as the President and Chief Executive Officer of Fairfax Health Care Center.  (*Id*.) Francine Bradshaw ("Bradshaw") served as Plaintiff's supervisor during her tenure at Fairfax. (McCrimon Dep. at 24,  ECF No. 11-7.)

-2-

Plaintiff was employed by Defendant at Fairfax Health Care Center from around March 25, 1997, until December 1, 2009, as a beautician and State Tested Nurse's Aid ("STNA"). (Pye Decl. at 1, ECF No. 11-1.)  Plaintiff's duties included bathing residents, serving meals, cleaning, doing laundry, accompanying residents to appointments, and styling residents' hair. (McCrimon Dep. at 26-32.) Additionally, Plaintiff performed secretarial duties at a nursing station. (*Id*. at 33.) Plaintiff earned the same rate of pay for each of her work duties. (*Id*. at 34.)

A time clock was used to record when employees clocked in and out of work. (*Id*. at 71.) When the time clock malfunctioned or when employees neglected to clock in, employees submitted "Missed Swipe Sheets" to record hours worked. (*Id*. at 74.)  Plaintiff admits that she submitted Missed Swipe Sheets on several occasions. (*Id.* at 74.)  Once submitted, employees are paid for all of the hours recorded on the Missed Swipe Sheet. (Mims Decl. at 1, ECF No. 11-10; Edwards Decl. at 2,  ECF No. 11-11; Wesson Decl. at 2, ECF No. 11-12.)  However, Plaintiff alleges that over the years Bradshaw regularly asked Plaintiff to clock out and continue to work overtime hours. (McCrimon Aff. at 1, ECF No. 17-1.)  Further, Plaintiff also maintains that Bradshaw instructed Plaintiff to record these overtime hours on slips of paper and submit them in an envelope. (*Id.*) Plaintiff contends that she consistently performed work in excess of forty hours per week, submitted the papers to Ms. Bradshaw, and was not properly paid. (*Id.*) Defendant maintains that Plaintiff only occasionally worked overtime and she was accurately paid for all overtime earned. (Pye Decl. at 2, ECF No. 11-1.)

During her employment with Defendant, Plaintiff was injured four times, and filed four Worker's Compensation claims. (Mot. for Summ. J. at 11, ECF No. 12.) Her fourth injury occurred on or about February 6, 2006. (McCrimon Dep. at 176-77, ECF No. 11-7.) Plaintiff fell down the

stairs, injuring her hand, wrist and shoulder. (*Id.*) As a result, Plaintiff was absent from work for a long period of time. (*Id.* at 177-78.) Plaintiff filed her fourth Workers' Compensation claim in 2006 for these injuries. (Pye Decl. at 3, ECF No. 11-1.) Eventually, Plaintiff returned to work. She was terminated in December 2009. (*Id.* at 6.) Plaintiff alleges that her termination was the result of her filing a Worker's Compensation claim. Defendant contends that Plaintiff was terminated for a legitimate business reason.

Although Plaintiff contests the validity of her corrective action and counseling records, Defendant documented work-related complaints against Plaintiff between 2000 and 2009. (Pye Decl. at 4-5, ECF No. 11-1.) On many occasions, Plaintiff was verbally counseled about her actions or issued written warnings. (*Id.*) However, Plaintiff was never disciplined or terminated, and was given repeated opportunities to improve her conduct. (*Id.* at 5.) Each time Plaintiff was confronted about her behavior reported by Defendant's employees, she completely denied the occurrence of any misconduct. (*Id.*) Around November 2009, the family of resident Cozette Wade ("Wade") withdrew her from the facility without warning. (*Id.*) Subsequently, Pye received a letter written by Wade's sister, Leatrice Robinson ("Robinson"). (Robinson Letter at 1, ECF No. 11-14.) In her letter, Robinson informed Pye that Wade had been removed because of Plaintiff's inappropriate treatment of Wade. (*Id.*) According to Robinson, Plaintiff had told Wade that her family had abandoned her; that her family wanted to put her in a mental institution; that her caretaker was only after Wade's money; and Plaintiff had attempted to obtain the keys to Wade's house. (*Id.*) Robinson was outraged by Plaintiff's alleged actions and expressed her intent to speak to an attorney about taking legal action against either Defendant and/or Plaintiff. (*Id.*) Upon reviewing Robinson's letter, Pye terminated Plaintiff. Defendant contends that Pye had a legitimate, good faith belief that Plaintiff

-4-

had abused a resident, and therefore, her termination was proper.  (Pye Decl. at 5-6, ECF No. 11-1.)

Plaintiff denies the allegations contained in Robinson's letter.  She maintains that Defendant's

argument that it relied on Robinson's letter in firing her was a pretext for the real reason for her

termination, her Worker's Compensation claim.  (McCrimon Aff. at 1, ECF No. 17-1; Pl.'s Br. in

Opp's to Def.'s Mot. for Supp. J. at 4, ECF No. 17.)  Plaintiff also contends that Defendant engaged

in a pattern of retaliatory actions after events surrounding her Worker's Compensation claim, which

ended with her termination.  (Pl.'s Br. in Opp's to Def.'s Mot. for Supp. J. at 5, ECF No. 17.)

## II.  MOTION FOR SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or
> defense–or the part of each claim or defense–on which summary
> judgment is sought.  The court shall grant summary judgment if the
> movant shows that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely

disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most

favorable to the non-moving party to determine whether a genuine issue of material fact exists.

-5-

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id*.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III.  LAW AND ANALYSIS

### A.  Defendant's Motion for Summary Judgment

#### 1.  Violations of FLSA and OMFWSA

_____Plaintiff alleges that while employed by Defendant, she consistently performed work in excess of forty hours per week without receiving "time and one half" overtime pay in violation of FLSA and OMFWSA.  Defendant argues that Plaintiff has not met her burden of proof for her unpaid overtime claim.

Under FLSA, employees are entitled to compensation for "employment in excess of [forty hours per week] at a rate not less than one and one-half times" the employee's regular rate of pay. 29 U.S.C. § 207(a)(1).  The OMFWSA has an identical requirement for overtime pay.  Ohio Rev. Code § 4111.03(A); *Simmons v. Wal-mart Assocs., Inc.*, No. 2:04-cv-51, 2005 U.S. Dist. LEXIS 21772, at *27 (S.D. Ohio July 19, 2005).  Because FLSA and OMFWSA have the same overtime provisions, courts evaluate these claims together.  *Simmons*, 2005 U.S. Dist. LEXIS 21772 at *26. The Sixth Circuit has held that an employee alleging a failure to pay overtime claim under FLSA must prove that she "performed work for which [she] was not properly compensated" by a preponderance of the evidence.  *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)).  Employees can do so through the use of their employer's records.  Employers have a duty to maintain records of an employee's wages and hours under 29 U.S.C. § 211(c), as employees seldom keep records of their wages and hours themselves. *See Simmons*, 2005 U.S. Dist. Lexis 21772 at *28. The Supreme Court explained the following regarding the employee's burden:

-7-

> [w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work . . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

*Anderson*, 328 U.S. at 687.

Assuming that the records are inaccurate, Plaintiff still has not met her burden, to demonstrate that she has been inadequately compensated. Plaintiff includes an affidavit from a former employee of Defendant, Ouedia Finch ("Finch"), who alleges that the time clock often did not work properly, hours were not properly recorded, and that they were told to write the shorted hours on a slip of paper, but the hours frequently did not show up on their paychecks. (ECF No. 18.) However, Finch fails to state how she knows Plaintiff, how she knows Plaintiff's hours in particular were improperly recorded as a result of the allegedly malfunctioning time clock, or how she knows Plaintiff was not accurately paid for all of her hours worked. Rule 56(c) of the Federal Rules of Civil Procedure requires an affidavit used to oppose a motion for summary judgment to be "made based on personal knowledge, and show that the affiant or declarant is competent to testify on the matters stated." As indicated above, Finch's affidavit meets neither of these requirements. Furthermore, Plaintiff's own affidavit is insufficient. In her affidavit, Plaintiff discusses that Bradshaw was aware she "worked uncompensated overtime on many occasions" and that Plaintiff would have to stay over her regular shift on many occasions, but "was usually not compensated for this extra shift." (McCrimon Aff. ¶¶ 11, 12, ECF No. 17-1.) Plaintiff has not produced any evidence demonstrating that she was not

-8-

properly compensated for overtime over a period of several years.  Although Plaintiff alleges that she documented her overtime hours on pieces of paper and submitted them to Bradshaw, Plaintiff has not provided copies or any records of these slips of paper.

In *Simmons*, although the plaintiff alleged that he worked off the clock many times, he "fail[ed] to support his assertions with any additional evidence" and "fail[ed] to identify a single specific day on which this occurred."  *Simmons*, 2005 U.S. Dist. LEXIS 21772, at *29-30.  Ultimately, the court held that the plaintiff's "bald assertion that from 1999 to 2003 he worked off the clock over 200 times on unspecific days [was] not enough to create genuine issues of material fact as to whether he [was] owed any additional compensation." *Id.* at 30.  Like Simmons, Plaintiff's allegations amount to no more than bald assertions that she sometimes worked off the clock.  Plaintiff fails to state the number of days, number of hours, or the dates on which this occurred.  Similarly, Plaintiff's claim for uncompensated overtime must also fail.  Therefore, the court finds that Plaintiff has failed to demonstrate that a genuine dispute exists as to any material fact remains on these claims.  Accordingly, the court grants Defendant summary judgment on Plaintiff's FLSA and OMFWSA claims.

## 2.  Worker's Compensation Retaliation

Plaintiff asserts that she was fired in retaliation for submission of her Worker's Compensation claim.  Defendant argues that Plaintiff has failed to make a prima facie case for retaliatory discharge for seeking Worker's Compensation benefits.  Plaintiff argues that she has demonstrated a pattern of retaliatory actions following her request for Worker's Compensation benefits, which ended with her termination in December, 2009.

Ohio Revised Code § 4123.90 states in pertinent part that:

> No employer shall discharge, demote, reassign, or take any punitive
> action against any employee because the employee filed a claim or
> instituted, pursued or testified in any proceedings under the workers'
> compensation act for an injury or occupational disease which occurred
> in the course of and arising out of his employment with that employer.

The Sixth Circuit has found that "[t]he scope of the cause of action created by the statute is very limited, and the burden of proof on the employee to specifically show that the termination was in direct response to the filing of a claim." *White v. Simpson Indus.*, 1 F. App'x 462, 466 (6th Cir. 2001). In order to state a claim for a retaliatory discharge under § 4123.90, Plaintiff has the burden to establish a prima facie case, which requires Plaintiff to allege 1) that the employee was injured while on the job, 2) that the employee filed a claim for workers' compensation benefits, and 3) that the employee was discharged in violation of § 4123.90. *Kilbarger v. Anchor Hocking Glass Co.*, 697 N.E.2d 1080, 1083 (1997). Furthermore, "[t]he employee's evidence must do more than raise an inference of improper motive." *White*, 1 Fed. App'x at 466 (internal citation omitted). If the employee makes a prima facie case, then the burden shifts to the employer to show a "nondiscriminatory reason for the discharge." *Kilbarger*, 697 N.E.2d at 1083. The employer need only demonstrate a legitimate, non-discriminatory reason for the discharge and does not need to prove this reason or the absence of retaliation. *Id*. If the employer satisfies his burden of asserting a legitimate, non-discriminatory reason for the employee's discharge, the burden shifts back to the employee. *Id*. Then it becomes the employee's duty to establish that the reason for the termination was pretextual and the real reason for the termination was the "employee's protected activity under the Ohio Worker's Compensation Act." *Id*. If the employee fails to show that the reason for termination was a pretext for termination in violation of the Ohio Worker's Compensation Act, then the employee's claim for retaliatory discrimination must fail. *Id*.

-10-

Here, Plaintiff may be able to establish a prima facie case.  The parties agree that Plaintiff was injured on the job, that she filed for Worker's Compensation benefits, and was terminated.  Plaintiff attempts to demonstrate that her termination was in contravention of § 4123.90.  Plaintiff has not presented any direct evidence, such as statements by Pye, Bradshaw, or any other employee of the Defendant, that would prove her Worker's Compensation claim was the true reason for her termination.  However, Plaintiff asserts that temporal proximity demonstrates her termination was in contravention of § 4123.90.  Plaintiff's fourth and final Worker's Compensation claim was filed in 2006.  (Pye Decl. ¶ 12.)  Plaintiff did not seek Worker's Compensation benefits to treat her injury between July 2007 and May 2009.  (*Id*. at ¶ 13.)  She reactivated the claim in May of 2009, and was approved to receive further treatment at that time.  (*Id*.)  Plaintiff was terminated in December 1, 2009.  Therefore, Plaintiff's temporal proximity argument may create more than an inference of improper motive as required under *White*.  1 F. App'x at 466.

Assuming, *arguendo*, Plaintiff had made a prima facie case, Plaintiff still has not fully satisfied her burden of proof under § 4123.90.  She has not put forth evidence rebutting Defendant's legitimate, non-discriminatory reason for termination by demonstrating pretext.  As discussed below, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, specifically that Pye had an honest belief that Plaintiff had verbally abused and engaged in hostile behavior toward a resident of Defendant's facility.  An employer has an honest belief when it "reasonably relied 'on the particularized facts that were before it at the time the decision was made.'"  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106,1117 (6th Cir. 2001) (internal citation omitted).  It is not required that the decisional process used by the employer be "optimal" or leave "no stone unturned."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  Furthermore,

-11-

an employee's own subjective disbelief in the employer's honest statement without any supporting evidence is not enough to create an issue of material fact.  *McDermott v. Cont'l Airlines, Inc.*, No. 2:06 cv 0785, 2008 U.S. Dist. LEXIS 29831, at *24 (S.D. Ohio Apr. 11, 2008).  Here, Defendant has put forth evidence that Pye's decision to terminate Plaintiff was reasonably based on the specific accusations in Robinson's letter, which were consistent with Plaintiff's history of misconduct, for which she had been counseled and warned numerous times.  Also, Defendant has put forth evidence that Pye believed that confronting Plaintiff with the accusations would not reach a meaningful result, as Plaintiff would flatly deny any misconduct, as she had always done in the past.  The fact that Wade's family believed the accusations against Plaintiff and immediately withdrew her from the Defendant's care, is evidence that further supports Pye's decision.  Thus, there is substantial evidence which would support a finding that Pye had an honest belief that Plaintiff had engaged in the offensive conduct at issue and determined that Plaintiff must be terminated to protect the residents and Defendant from further liability.

Inasmuch as Defendant has established legitimate, non-discriminatory reasons for its actions, Plaintiff has the burden of proving pretext by showing that the proffered reason 1) has no basis in fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct.  *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Here, Plaintiff has offered no evidence that Defendant's belief that Plaintiff mistreated a resident had no basis, did not actually motivate Defendant's firing of Plaintiff, or was insufficient grounds for termination.  Plaintiff attempts to use an expert report to support her claim of retaliation, contending that it demonstrates pretext.  In the report, Plaintiff's expert, Gregg Austin ("Austin"), discusses the

voluntary abandonment defense[1], and that he believes to "a reasonable degree of legal certainty, that the evidence in this case supports the conclusion that Inner City Nursing Home discharged Pearl McCrimon in retaliation for her pursuit of workers' compensation benefits." (Austin Report at 1-2, ECF No. 17-3.)  Austin concludes that "Inner City made a determination to begin creating a paper trail of negative 'counseling' events, and the timing and character of those events corresponds directly to Pearl McCrimon's pursuit of workers' compensation benefits after she had returned to work as a 'damaged' asset for the company." (*Id*.)  Plaintiff's expert seeks to opine on the counseling events, yet does not indicate that he has either reviewed the files containing the counseling events or talked to Defendant or its employees regarding the counseling events.  He only states that he has reviewed Plaintiff's Worker's Compensation claim file.  (*Id*. at 2.)

Further, Defendant argues that the expert's report should be precluded on several other grounds.  Plaintiff did not disclose the identity of any expert witness in its Initial Disclosures or any supplement to them, pursuant to FED. R. CIV. P. 26(a)(1). Further, in the Joint Position Statement filed with the court by the parties, both parties indicated that they "do not anticipate utilizing experts or expert reports."  (ECF No. 8.)  The report also fails to include the expert's qualifications as required by FED. R. CIV. P. 26(a)(2).  In addition, Plaintiff's expert report fails to comply with FED R. EVID. 702.  First, testimony by experts is allowed if "scientific, technical, or other specialized

---

[1]     Although Plaintiff mentions this defense several times, it has not been asserted by Defendant in the instant case. This defense was advanced by Defendant in another, separate proceeding in regard to Plaintiff's renewed request for benefits for a Worker's Compensation claim initially filed in 2006.  Plaintiff had not sought benefits between July 2007 and May 2009, but reactivated the claim in May 2009.  Thus, Defendant argued that Plaintiff had voluntarily abandoned her claim.

knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. The instant situation is not one in which expert testimony is necessary. The court needs no assistance in evaluating the evidence and the law regarding pretext. Second, the testimony is allowed if "the testimony is based upon sufficient facts or data." *Id*. As discussed above, the report is not based upon sufficient facts or data. Furthermore, the testimony is inadmissible inasmuch as it seeks to offer a legal conclusion regarding whether the employee was retaliated against. Consequently, such expert testimony must be excluded. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994). As Plaintiff has failed to comply with FED. R. EVID. 702 and FED. R. CIV. P. 26, the court will disregard the report.

Plaintiff has not otherwise demonstrated that "the real reason for [her termination] was [her] protected activity under the Ohio Worker's Compensation Act," as required under § 4123.90. *Kilbarger*, 697 N.E.2d at 1083. Plaintiff attempts to argue that temporal proximity, termination in proximity to a Worker's Compensation event, supports a claim of retaliation and defeats summary judgment. However, she relies on a non-binding Tennessee state court decision to do so. The Sixth Circuit and Ohio courts have found that generally temporal proximity alone does not support a claim for retaliation, although certain circumstances may warrant it. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir. 2000); *Motley v. Ohio Civ. Rights Comm'n*, No. 07AP-923, 2008 WL 2026426, at *4 (Ohio App. May 13, 2008). Typically, a temporal connection must be accompanied with other indicia of retaliatory conduct to create an inference of retaliation. *Dicarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004); *Motley*, 2008 WL 2026426 at *4. Plaintiff has neither demonstrated this is such a case where temporal proximity alone is sufficient, nor that there is other compelling

-14-

evidence to support a claim of retaliation.[2]  Therefore, Plaintiff's arguments regarding temporal proximity are unavailing.

Plaintiff also attempts to use an affidavit of a former employee of the Defendant to demonstrate she was in fact retaliated against.  (Finch Aff., ECF No. 18.)  As stated above, Rule 56(c) of the Federal Rules of Civil Procedure require an affidavit used to oppose a motion for summary judgment to be "made based on personal knowledge, and show that the affiant or declarant is competent to testify on the matters stated."  Finch's affidavit meets neither of these requirements. The affidavit only states that Finch was also injured at work and later terminated, which she felt was a result of her injuries.  However, this affidavit neither demonstrates pretext nor addresses Plaintiff in any way.  The Sixth Circuit has held that such "me too" evidence, if relevant, would violate FED. R. EVID. 403 if admitted, since the probative value would be substantially outweighed by the unfair prejudice caused by its admission.  *Schrand v. Federal Pacific Electric. Co.*, 851 F.2d 152, 156-57 (6th Cir. 1988).  Plaintiff fails to demonstrate that "the evidence in this case overcomes the reasons for inadmissibility articulated in *Schrand*, namely that the same actors, reasons, and other circumstances were involved."  *Calderwood v. Omnisource Corp.*, No. 3:04 CV 7765, 2007 WL 2838969, at *5 n.10 (N.D. Ohio Sep. 26, 2007).  Finch does not indicate that she has filed any Worker's Compensation claims, that she faced counseling regarding her conduct, or that any resident has indicated that she engaged in abusive conduct.  In addition, Finch fails to explain how she knows

---

[2]      The court notes that Plaintiff's brief is filled with derogatory speculation regarding Defendant's counsel that is completely inappropriate and will be disregarded by the court.

Plaintiff, how she knows Plaintiff was retaliated against, if she observed such retaliation, or if she knows anything about Plaintiff's workplace injuries.

Thus, Finch's affidavit cannot establish that Plaintiff was in fact retaliated against or demonstrate that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff's employment was a pretext for retaliation. Therefore, because Plaintiff has failed to establish a prima facie case of retaliation, has improperly raised new allegations, and has not rebutted Defendant's legitimate, non-discriminatory reason for termination, Plaintiff has failed to show a genuine dispute exists on her retaliatory termination claim. Accordingly, Defendant is entitled to summary judgment on this issue.

### 3. Violation of COBRA

Plaintiff alleges that Defendant violated COBRA by "unlawfully failing to offer participation on the group help [sic] plan." (Compl. ¶ 12, ECF No.1)  Defendant argues that Plaintiff admits she was ultimately offered COBRA, and therefore this claim should be dismissed. This is not dispositive however, because Defendant does not contest the fact that Plaintiff was not offered the benefits timely.  Further, Plaintiff indicates that when she was offered the benefits, she did not accept them. She nonetheless indicates that if she were offered COBRA benefits earlier, she would have purchased coverage to cover her January 2010 medical procedure.  Therefore, a material issue of fact remains regarding Plaintiff's claim that Defendant violated COBRA by failing to offer her benefits. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's COBRA claim.

-16-

**B. Plaintiff's Motion to Strike**

In Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment (ECF No. 12.), she argues that the letter from Robinson concerning Plaintiff's treatment of Wade, and Plaintiff's counseling and corrective action records, are inadmissible hearsay and should be stricken. Plaintiff contends Robinson's letter is an out-of-court statement offered to prove the truth of the matter asserted. Plaintiff further argues that the counseling and corrective action records contain statements that are not the words of the person making the record, and fail to meet the trustworthiness and contemporaneousness requirements of the business records exception. In addition, Plaintiff argues that because Defendant's Motion is entirely based on these hearsay statements, Defendant's Motion should be stricken in its entirety. Plaintiff is correct that hearsay evidence, which does not fall within an exception, may not be considered on a motion for summary judgment. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). However, the court finds Defendant's argument that the letter and records are not being used for a hearsay purpose to be persuasive.

First, although hearsay is generally not admissible, Robinson's letter to Pye is not hearsay. *See* FED. R. EVID. 802. Under Federal Rule of Evidence 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Defendant argues that Robinson's letter is not hearsay because it is not offered for its truth, and instead, the letter is offered as evidence to show Pye's state of mind and belief when he made the decision to terminate Plaintiff. It is well-settled that "a statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) (internal citation omitted). Similarly, a letter is not hearsay when it is not offered to prove its truth, but to show what the reader

-17-

of a letter believed.  *See United States v. Harris*, 942 F.2d 1125, 1130 (7th Cir. 1991).  Here, Robinson's letter has been offered, not as proof that Plaintiff abused a resident, but instead as evidence of Pye's good faith belief that Plaintiff had mistreated a resident and that Plaintiff was terminated for a legitimate, non-discriminatory reason.  Pye also gave credence to the facts that Wade was immediately removed from the facility and that Robinson had threatened legal action.  The letter was offered to support the conclusion that it was reasonable for Pye to believe that if Defendant continued to employ Plaintiff, Defendant could face substantial legal liability.  Therefore, Robinson's letter is properly admissible because it is not being used for a hearsay purpose.

Second, Plaintiff's counseling and corrective action records are also admissible as non-hearsay and under FED. R. EVID 801(c).  As stated above, in order to constitute hearsay, a statement must be offered for its truth.  *See* FED. R. EVID. 801(c).  The Sixth Circuit has held that witness statements contained within investigative reports are not hearsay when offered in support of summary judgment, because they are not being offered for the truth of the matters asserted therein, but to show the state of mind and motive of employer's managers in taking adverse employment actions against employee.  *See Michael v. Catepillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (citing *Haughton v. Orchid Automation*, 206 F. App'x 524, 532 (6th Cir.2006)).  Other courts have held that disciplinary records are also not hearsay, since they are not being offered for the truth of the matter asserted.  *See e.g., Turner v. Kansas City S. Ry. Co.*, 622 F. Supp. 2d 374, 385 (E.D. La. 2009) (holding that discipline letters and records were not being offered for the truth of the matters asserted and were not hearsay under FED. R. EVID. 801, rather the documents were admissible to "show the information available to the decision-makers at the time the adverse employment decisions were made");  *Godoy v. Maplehurst Bakeries, Inc.*, 747 F. Supp. 2d 298, 305 (D. P.R. 2010) (holding a

-18-

letter informing employee that he was being disciplined was not hearsay, and thus admissible, because it was offered to prove the fact that he was disciplined, not to prove the truth of the underlying claims).  Here too, the counseling and corrective action records are not offered to prove that Plaintiff was an argumentative and uncooperative employee.  Instead, Defendant has offered these documents to show that Defendant received and recorded multiple complaints about Plaintiff's conduct and that Plaintiff had been counseled by her supervisor many times.  Further, these records tend to show Pye's state of mind and that Plaintiff's termination was reasonable and in good faith given the numerous complaints Defendant received about Plaintiff.  Therefore, the records are admissible since they are not being used for a hearsay purpose.

Both Ms. Robinson's letter and the counseling and corrective action records are properly admissible as non-hearsay.  Thus, the court need not consider Plaintiff's argument that the corrective action and write ups are hearsay, and do not qualify for the Business Record Exception to hearsay. In sum, the disputed evidence is admissible, and therefore Defendant's argument is not based upon hearsay evidence.  Consequently, Plaintiff's Motion to Strike is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike (ECF No. 12) is denied,  Defendant's Motion for Summary Judgment (ECF No. 11) is granted in part and denied in part, and Plaintiff's

Motion for Extension of Time (ECF No. 13) is denied as moot.  Therefore, the only claim that remains is Plaintiff's claim for violation of COBRA.

        IT IS SO ORDERED.


                     /s/ *SOLOMON OLIVER, JR.*
                     CHIEF JUDGE
                     UNITED STATES DISTRICT COURT


September 30, 2011